STATE OF MISSOURI, Defendant in Error, *vs.* WILSON J. JEFFORS, Plaintiff in Error.

1. *Practice, crim.—Entries nunc pro tunc—On what foundation may be made.—* Where a clerk omits to make an entry which was ordered to be made, or makes a different entry from that which was ordered, the court may at a subsequent term amend the record so as to make it conform to the truth; provided some entry either in the minutes kept by the judge or clerk, or some paper filed in the cause sustaining them shows facts from which the amendment can be made. It cannot be so amended by evidence *aliunde,* nor by facts in the breast of the judge.

2. *Practice, crim.—Amendment of entries nunc pro tunc at subsequent term—When improper—Autrefoit acquit, etc.—Discharge of jury by operation of law, effect of.—*On the trial of an indictment for a felony, where the case is submitted to the jury, and the only entry in the record showing what became of the jury is that "after hearing the allegations, proof and pleadings as well on behalf of the State as on the part of defendant they retired to consider of their verdict," and no record is made on the judge's docket or clerk's minutes in regard to the discharge of the jury or the continuance of the cause, the court cannot, at a subsequent term and on an affidavit of the clerk, direct the entry of a *nunc pro tunc* order showing the discharge of the jury. But such state of the record will not authorize the discharge of the prisoner on motion, at a subsequent term, nor bar his subsequent trial for the same offense. For his life was not thereby judicially put in jeopardy, nor do such entries on the record raise the legal presumption of an acquittal. (See Const. Bill of Rights, § 23.) And the discharge of the jury either where the term expired by limitation or *ex vi termini* by the commencement of another term will not bar a re-trial.

3. *Jury—Discharge of in cases of felony—Power of court should be exercised, how.—*The power of a court to discharge a jury in cases of felony should be exercised with great caution.

### Error to Osage County Circuit Court.

*Lay & Belch,* for Plaintiff in Error, cited: Hide vs. Curling, 10 Mo. 359; Gibson vs. Chouteau's heirs, 45 Mo. 171; Morrison, Adm'r, vs. Dassman, 3 Cal. 255; Moody vs. Grant, 41 Miss. 565; West vs. Galloway, 33 Ala. 306; Davis vs. Ballard, 7 Mon. 604; Bondurant vs. Thompson, 15 Ala. 202; Kitchen vs. Moye, 17 Ala. 143; Comm. vs. Lester, 17 Serg. & R. 164; 17 Mo. 541; 48 Cal. 323; Cool. Const. Lim. 525, 526; 26 Ala. 155; 1 Stark. Cr. P. 262; 1 Ch. Cr. Law, 723; 1 Arch. Cr. Pr. & E., 186; 10 Yerg. 542; 23 Wend. 47.

*J. L. Smith, Att'y Gen'l,* for Defendant in Error, cited: Const.: Art. II, § 23; State vs. Clark, 18 Mo. 432; Whart. Crim

Law, §§ 580–586 ; State vs. Matrassey, 47 Mo. 295 ; Wagn. Stat. 422, § 30.

NORTON, Judge, delivered the opinion of the court.

Defendant was indicted by the grand jury of Osage County for murder in the first degree, for shooting and killing one Ambrose Spencer in April, 1876. At the adjourned April term of the Circuit Court of said county held in June, defendant having been duly arraigned, and having pleaded "not guilty," the trial of the cause by a jury was commenced on the 17th day of June and continued from day to day till the 22nd of June, when it was finally submitted to the jury, the record showing that on that day they retired to consider of their verdict. At the October Term, 1876, of said court, the defendant filed his motion, asking the court to dismiss the cause and discharge him ; " because the records of the court show that at the April Term, 1876, said defendant was duly arraigned and tried before a qualified jury ; that said jury was not discharged by any order of said court, or by and with the consent of the defendant."

A motion was also filed on the part of the State asking the court to make an order requiring the clerk to amend the record and enter an order *nunc pro tunc,* showing that the jury had been discharged, being unable to agree upon a verdict, and the continuance of the cause.

The motion filed by the State was sustained and the motion of defendant was overruled, to which action of the court defendant excepted. The cause was then tried by a jury, resulting in the conviction of defendant for murder in the second degree, and the assessment of his punishment at imprisonment in the penitentiary for twelve years. A motion for new trial having been overruled, the cause is brought to this court on appeal.

The defendant seeks a reversal of the judgment on the grounds that the court erred in sustaining the motion on the part of the State, and directing the entry of a *nunc pro tunc* order showing the discharge of the jury at the April adjourned term of said court, and in overruling the motion of defendant for the dismissal of the cause and the discharge of defendant.

The only evidence offered in support of the motion for correcting and perfecting the record was the affidavit of the clerk of the court and prosecuting attorney, in which they state that the next day after the jury had retired to consider of their verdict, they came into court, and in the presence of the accused and his counsel, announced that they were unable to make a verdict, and thereupon they were discharged by the court and the cause was continued and defendant remanded to jail—all which the clerk omitted to record.

It does not appear that any entry of record was made, showing what became of the jury, other than the one which states " that after hearing the allegations, proof and pleadings as well on behalf of the State as on the part of defendant, they retired to consider of their verdict.

No entry appears to have been made either on the docket or calendar of the judge, or in the minute book of the clerk, in regard to the discharge of the jury, or the continuance of the cause.

When a clerk omits to make an entry which was ordered to be made, or makes a different entry from that which was ordered, the court may, at a subsequent term, amend the record so as to make it conform to the truth, provided some entry either in the minutes kept by the judge or clerk, or some paper filed in the cause and sustaining them, show the facts from which the amendment can be made.   (Dunn vs. Raley, 58 Mo. 134.)

The power possessed by courts to make *nunc pro tunc* entries in a cause, after the end of a term, does not authorize the entry of an order which ought to have been made, but only those which were actually made, the evidence of which is preserved by some minute made at the time.   Evidence *aliunde* cannot be resorted to for such purpose.   To allow such entries to be made on facts resting in the mere memory of witnesses, and their statements as to what occurred, would be to establish a rule which would breed the utmost confusion and uncertainty, and make courts of record everything except what the law intends them to be.   Neither can such entry be made after the end of the term upon the knowledge of the judge him-

self. During the term, which is in legal estimation but one day, everything is in *fieri*, and during that time the judge, of his own knowledge, may enter any judgment which has been pronounced. (Harrison vs. State, 10 Yerg. 542.) Inasmuch as the record was attempted to be amended upon the statement of witnesses and the knowledge of the judge, after the end of the term, the motion of plaintiff for a *nunc pro tunc* entry ought to have been overruled.

While this motion should have been overruled, it does not follow that the motion of defendant for his discharge should have been sustained. It is argued here that as defendant had once been put upon his trial, and as the jury to which his case had been committed had, after hearing the evidence and argument, retired by leave of court to consider of their verdict, and as the record is silent in regard to the disposition made of the jury and the case, the defendant is therefore entitled to his discharge upon the ground that he had thus once been put in jeopardy.

This question is not free from difficulty, and the effect of the discharge of a jury by the court because of their inability to agree upon a verdict, or of failure to discharge them at all, has given rise to considerable conflict of opinion, and in some of the States it has been held to be a bar to a second trial and to entitle the accused to his discharge; while in others, quite as numerous and respectable, a different conclusion has been reached. While it has been decided in Pennsylvania, Virginia, North Carolina, Tennessee, Indiana and California that the discharge of the jury in a criminal case except by defendant's consent, and in cases of such violent necessity as may be considered the act of God, will bar another trial, it has been otherwise held by the Supreme Court of the United States and the courts of Massachusetts, New York, Illinois, Kentucky and Mississippi, which have decided that the discharge of a jury by the court in the exercise of a sound discretion does not operate as a bar to a second trial. (1 Whart. Crim. Law, 573–590.) The conflicting views expressed by these various courts we will not undertake to reconcile, being disposed to adopt the views expressed in 2 Sto. on the Con. § 1787, p.

546, as in consonance with sound reason, judicial interpretation, and our own constitution.

It is there said "that no person shall be subject for the same offense to be twice put in jeopardy of life and limb."

The meaning of it is, that a party shall not be tried a second time for the same offense, after he has been once convicted or acquitted of the offense charged by the verdict of a jury, and judgment passed thereon for or against him.

But it does not mean that he shall not be tried for the offense a second time if the jury have been discharged without giving any verdict, or if having given a verdict, judgment has been arrested upon it, or a new trial has been granted in his favor ; for in such case his life or limb cannot be judicially said to have been put in jeopardy.

The above meaning of the clause "no person shall be twice put in jeopardy" has been virtually embraced in the 23rd section of the bill of rights in our own constitution, which declares ; " that no person shall be compelled to testify against himself in a criminal cause, nor shall any person after having been once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty ; but if the jury to which the question of his guilt or innocence is submitted, fail to render a verdict, the court, before which the trial is had, may, in its discretion, discharge the jury, and commit or bail the prisoner for trial at the next term of the court, or if the state of the business will permit at the same term ; and if judgment be arrested after a verdict of guilty on a defective indictment, or if judgment be reversed for error in law, nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law."

Under this section of the constitution, if the record in this case had shown the discharge of the jury because of their inability to make a verdict, it would not be pretended for a moment that this would entitle the defendant to his discharge in the face of the constitutional provision, which declares, that nothing short of a verdict of acquittal shall prevent a second trial.

This provision of the constitution was in part intended to change, and did in fact change, the rule at common law which authorized the court to confine the jury under strict charge of a bailiff, to be fed on bread and water till the end of a term, unless a verdict was sooner returned; and if a verdict was not then returned, to transport them around the circuit in a cart till they did agree upon a verdict. Strict as this rule was, it was, nevertheless, within the power of the court to discharge a jury without prejudice to the crown or commonwealth, for causes which could not be foreseen nor guarded against, such as the sudden death of a juror during the progress of the trial. The provision above quoted, declares in plain terms that nothing short of an acquittal by a jury shall prevent a second trial. This being its obvious meaning, we do not see how the trial court could have done otherwise than overrule the motion for the discharge of the defendant, as his right to a discharge, if force be given to the constitution, depended upon his acquittal by a jury—which the record in the case does not show. But it is argued that as the record only shows that the jury retired to consider of their verdict, and no further notice is taken of them, this is in legal contemplation an acquittal.

We do not think that this follows. It cannot certainly amount to an acquittal by the jury, for an acquittal by them can only be evidenced by their verdict, and the record before us shows no such verdict, but only that they retired to consider of their verdict. After a jury retires for this purpose, there are three ways in which they might lawfully be discharged. First, by returning into court a verdict for conviction or acquittal; second, by being discharged by an order of court because of their inability to agree upon a verdict, or by consent of defendant or some unavoidable cause, such as the sudden death of a juror; and third, by the expiration of the term of the court in which the trial is pending.

The jury in the case at bar was not discharged either in the first or second of the specified ways. Were they discharged by the expiration of the term of the court in which the trial was pending, and if so, what was the effect of such dis-

charge? In determining this question, judicial notice will be taken of the law establishing circuits, and of the times for holding courts in them. Osage County, in which this trial was had, is in the ninth judicial circuit, which comprises the counties of Maries, Osage, Gasconade and Franklin. (Wagn. Stat., 431, § 14.) The times prescribed for holding courts in these counties is as follows : in Maries, on the second Mondays in April and October ; in Osage, on the third Mondays in April and October ; in Gasconade, the second Mondays after the third Mondays in April and October ; and in Franklin, on the fourth Mondays after the third Mondays in April and October.

It was legitimate for the Circuit Court of Osage County to adjourn the April Term of that court till June—a period beyond the times prescribed for holding the courts in Gasconade and Franklin—but the April Term could not be adjourned to a time beyond the third Monday in October, when by the law another term was to begin. Under any view which can be taken, when the October Term began the April Term ended *ex vi termini legis*. It can make no difference whether the end of the April adjourned term, held in June, was brought about either by an order of the court adjourning it, after the business of the term was through with, or by operation of law when the April Term was dissolved and lost in the October Term. In either case, the jury would be discharged from the bestowment of any further consideration of their verdict. It is said in 1 Whart. Crim. Law, (590, § 588,) " that the statutory close of a term of a court has been held to justify a discharge of a jury, which is no bar to a subsequent trial except in North Carolina." In the case of Williams vs. The Commonwealth, (2 Grat. 568,) where it was adjudged that the discharge of a jury by the court, after they had been out considering their verdict for two days, " because there was no possibility of their rendering a verdict during the term," entitled defendant to his discharge, it was observed even then by the court " that it was the practice in Virginia in the case of a hung jury in a trial for a felony either to adjourn the court at the end of the term, taking no notice of the jury—in which case they are necessarily discharged by operation of law—or else to

call the jury in and discharge them simultaneously with the final adjournment of the court, and this practice was approved."

The only reasons assigned in the motion for defendant's discharge were that the jury in the first trial had, was not discharged by any order of court, or by consent of defendant. This might be true; yet if they were discharged by operation of law without any formal order of the court, such discharge would not operate as a bar to another trial. That they were thus discharged, we have already shown, and it therefore follows that the action of the court in overruling the motion was rightful.

We express no opinion as to the effect of an arbitrary unwarranted discharge of a jury in a case of felony.

The power to discharge for certain causes undoubtedly exists; but it should be exercised with great caution, as the citizen whose life or liberty is given to the hands of a jury is entitled to fair consideration by them, of which he should not be deprived by the arbitrary action of the court.

Judgment affirmed, the other judges concurring except Sherwood, Chief Justice, absent.