## BELKIN, *Appellant*, v. RHODES.

1. **Judgment nunc pro tunc at Subsequent Term.** Where the clerk fails to enter a judgment or enters an erroneous one, the court, at a subsequent term, may order the actual judgment entered *nunc pro tunc.*

2. ————: MUST BE BASED ON RECORD. An entry of judgment *nunc pro tunc* at a subsequent term must be based on the judge's minutes or the clerk's entries, or on some paper on file in the case. It cannot be made upon the judge's recollection of what took place at the trial, or upon outside evidence.

3. ————: PRESUMPTION: ORDER REVIEWABLE ON APPEAL. The presumption is, that a judgment entered *nunc pro tunc* at a subsequent term was based upon competent evidence. But where the facts appear, the action of the court may be reviewed on appeal.

4. **Irregularity:** DEFAULT: WAIVER. The name of one of several defendants did not appear in the petition when filed or the writ when issued, but was added before service. He did not appear and judgment was entered against him by default. *Held,* that the objection was waived.

*Appeal from Madison Circuit Court.*—HON. J. B. ROBINSON, Judge.

REVERSED.

*B. B. Cahoon* for appellant.

1. A court by an order *nunc pro tunc* will correct clerical errors which have occurred at the time (not before) the judgment was rendered whereby the clerk entered a different judgment from that actually rendered by the court. *Allen v. Sales,* 56 Mo. 28; *Priest v. McMaster,* 52 Mo. 60; *Gibson v. Chouteau,* 45 Mo. 171; *Mann v. Schroer,* 50 Mo. 306; *Page v. Arnold,* 51 Mo. 158; *Jillett v. National Bank,* 56 Mo. 306; *Jones v. Hart,* 60 Mo. 353; Freeman on Judgt., §§ 61, 68. But where a court has omitted to make an order it might or ought to have made, it cannot, at a subsequent term, be made *nunc pro tunc. Priest v. McMasters,* 52 Mo. 62; *Gibson v. Chouteau,* 45 Mo. 171; *Turner v.*

*Christy*, 50 Mo. 145; *State v. Jeffors*, 64 Mo. 378. But such *nunc pro tunc* order cannot be made from outside evidence or from facts existing alone in the breast of the judge at the end of the term at which the final judgment was rendered, but the court must have made the order or judgment, and the clerk must have omitted to properly enter it. *State v. Jeffors*, 64 Mo. 378; *Jones v. Hart*, 60 Mo. 356; *Saxton v. Smith*, 50 Mo. 490; *Pockman v. Meatt*, 49 Mo. 348; *Dunn v. Raley*, 58 Mo. 134; *Fletcher v. Coombs*, 58 Mo. 430.

2. As to the irregularity of adding defendant's name after the filing of the petition and the issuance of the writ, the defendant by failing to bring the matter to the attention of the court waived it. Whit. Mo. Pr., p. 196; *Delinger v. Higgins*, 26 Mo. 180; 48 Mo. 454; 48 Mo. 455. After the service of summons he was confined to the remedy of a motion to set aside the writ or to set aside the default by proper motion, showing in it diligence, merits, etc. *Campbell v. Garton*, 29 Mo. 343; *Tennison v. Tennison*, 49 Mo. 110. Even though the judgment was obtained by fraudulent collusion of plaintiff (and nothing of this kind is alleged or shown) all the cases in this State, to set aside judgments so obtained, have been by direct proceedings in equity wherein it was universally held that a judgment so obtained cannot be set aside collaterally, as here sought, nor in any other way save by a direct proceeding in equity for that purpose. *Mayberry v. McClurg*, 51 Mo. 259; *Harris v. Terrell*, 38 Mo. 421; *Miles v. Jones*, 28 Mo. 87; *State v. Towl*, 48 Mo. 148; *Yantis v. Burdett*, 3 Mo. 457, 458; *Collier v. Easton*, 2 Mo. 145; Freeman on Judgments, § 132. No matter how irregular the judgment is, if it is not absolutely void, (and no case can be produced showing this one is,) it cannot be attacked or set aside collaterally. *Childs v. Shannon*, 16 Mo. 331. Upon final judgment, as in this case, though erroneous, it can be set aside only at the term at which it was rendered, and not afterwards. *Downing v. Still*, 43 Mo. 309; *Harbor v. Pac. R. R. Co.*, 32

Mo. 423; *Branstetter v. Rives*, 34 Mo. 318; *Huthsing v. Maus*, 36 Mo. 109; *Doan v. Holly*, 25 Mo. 357; *Brewer v. Dinwiddie*, 25 Mo. 351; *Williams v. Cooper*, 27 Mo. 226; *Hill v. St. Louis*, 20 Mo. 584; *Caldwell v. Lockridge*, 9 Mo. 358; *Ashby v. Glasgow*, 7 Mo. 320; *Payne v. Collier*, 6 Mo. 322 and note. It is true some of the later cases hold that *nunc pro tunc* judgments may be made at any subsequent term to correct clerical errors in entering different judgments than those ordered by the court at the time the judgment was rendered, but these latter cases do not extend beyond this statement. *Allen v. Sales*, 56 Mo. 28, and cases cited *ante*. The relief afforded was virtually equitable relief, which cannot be given on motion. *Hull v. Sherwood*, 59 Mo. 173; *Phillips v. Evans*, 64 Mo. 24; *Holden v. Vaughan*, 64 Mo. 588.

*Jno. B. Duchouquette* for respondent.

RAY, J.—It appears from the record in this cause, that at the September term, 1876, of the Madison circuit court, a judgment was rendered in favor of plaintiff, Jasper Belkin, against the defendants Jacob M. Rhodes and Joseph A. Rhodes, for $525, and costs of suit; that at the March term, 1877, of said court, the defendant Joseph A. Rhodes appeared in court and filed his motion in said cause, alleging substantially, among other things, that the judgment actually rendered by the court was against the defendant Jacob M. Rhodes alone, and did not include him, the said Joseph A. Rhodes, and that the judgment so appearing of record was entered up by the mistake and misprision of the clerk, and was not and is not the judgment actually rendered as aforesaid, and asking the court by its entry *nunc pro tunc* to annul the judgment so appearing of record, and enter up now for then, the true judgment actually rendered as aforesaid.

The record further shows that the action in which said judgment was rendered, was in favor of Jasper Belkin, as

plaintiff, and against Jacob M. Rhodes, James A. Kennedy, Frank Thompson and Joseph A. Rhodes, trading as partners under the firm name of Rhodes, Kennedy & Co., as defendants; and that said action was founded on a promissory note executed in the firm name of Rhodes, Kennedy & Co.; that the suit was returnable to the March term, 1876, and the summons returned duly served on all the defendants more than fifteen days before the return day thereof; that at the return .term the defendants Jacob M. Rhodes and Joseph A. Rhodes made no appearance and filed no answer or other plea to said action; but that the defendants Thompson and Kennedy, each filed a separate answer, to the effect that the note sued on was not signed or executed by him, or by any one authorized so to do; that he or his firm never received any consideration therefor; and that the same was executed by the said Jacob M. Rhodes in the firm name without authority, and for his individual debt, as the plaintiff well knew. To these answers of Kennedy and Thompson the plaintiff filed replies to the effect: First, of a general denial, and secondly, that the consideration of said note was lumber and other property, originally sold by plaintiff to the firm of Rhodes, & Picker, which firm was succeeded by the firm of Rhodes, Kennedy & Co., and that when the latter firm succeeded the former, said lumber and other property were unused, and that the latter firm .took the same into its possession and held and controlled it, and used portions of it, and permitted said Jacob M. Rhodes to sell the remainder; that said note was executed by said Jacob M. Rhodes after the formation of said latter firm, and while it had the possession and control of said lumber and property, and was receiving its use and benefit; and that said Jacob M. Rhodes had authority to execute said note in said firm name aforesaid.

The record further shows that on the third day of the September term, 1876, of said court, a judgment by default was regularly taken and entered of record, against the said

defendants Jacob M. Rhodes and Joseph A. Rhodes for want of answer; and that afterwards on the sixth day of the September term, 1876, said cause coming on for trial, on the separate answers of Kennedy and Thompson and the issues joined thereon, and a jury being elected and sworn to try said issues, and all the evidence being heard, the court gave said defendants, Kennedy and Thompson, a certain instruction numbered one, and filed in the cause and hereinafter set forth, whereupon the cause, on motion of the plaintiff, was dismissed as to Thompson and Kennedy; and it appearing to the satisfaction of the court that the default of the remaining defendants herein, had heretofore been entered, and that the cause of action was founded on a promissory note, by which the debt and damages were ascertained, it was ordered by the court that the jury be discharged, and the court proceeding to find by computation the amount due, doth find that defendants are indebted to plaintiff on said note in the sum of $525, debt and damages. It was therefore considered, ordered and adjudged by the court that plaintiff have and recover of said defendants the amount so found due as aforesaid, and that there be thereof execution, etc.

Upon the hearing of this motion the record shows that the entire record in the cause was offered and received in evidence; and that the court, having duly inspected the judge's docket entry, the said instruction and other record entries, and having fully considered the same, thereupon sustained said motion, and ordered the judgment prayed for to be entered of record, now for then, which was accordingly done.

The record also shows that the reformed judgment so entered up, under said order *nunc pro tunc*, recites, among other things, that it appeared to the court that the note in suit was executed by the said Jacob M. Rhodes in the firm name without authority, for his individual debt, and that he alone was liable therefor, and that such was the judgment actually rendered by the court, at said term of court. It

further appears that the court thereupon also ordered the executions issued upon said judgment to the sheriffs of Wayne and Madison counties to be recalled as to said Joseph A. Rhodes, and all moneys made or collected thereon from said Joseph A. Rhodes, to be paid over to him. To all which orders so made the plaintiff at the time objected and excepted, and in due time and manner appealed therefrom to this court. And this action of the court is here assigned for error.

It also appears that in the progress of the trial of this motion, the defendant Joseph A. Rhodes offered in evidence and especially relied:

First, upon the minutes or memorandum in writing, on the docket of the judge of said court, made at the September term, 1876, opposite the title of said cause, as follows, to-wit:  Jasper Belkin v. Rhodes, Kennedy & Co. Dismissed as to Thompson and Kennedy. and 'udgment against remaining defts. for $529.96.

Secondly, on an instruction given by said court and on file therein upon the separate defense of Kennedy and Thompson as set forth in their said answers, which instruction is as follows, to-wit:  If the jury shall find from the evidence in the cause, that the lumber for which the note in suit was given was lumber purchased by Rhodes prior to the formation of the partnership of Rhodes, Kennedy & Co., defendants is this action, then, in such case, the other defendants in this cause, aside from Rhodes, are not liable therefor, by reason of said Rhodes' execution of the note after the formation of the partnership between defendants, even though such firm got the benefit of the lumber so purchased by Rhodes, and they must in such event, find for the defendants Kennedy and Thompson, unless they further find that they expressly or impliedly gave their consent to or sanctioned the giving the note in its present form.

It further appears that when said docket entry of the judge was offered in evidence, the judge declared that.

while the word "defts.," as above written, in said order, on his docket, looked somewhat as though the letter "s" was made after the letter "t," yet it was simply his method of writing, and the word, as shown by the docket where there was only one defendant, was meant by him to be "deft.," and was deft.; and the court thereupon erased from said entry of said docket the said mark of the pen following the letter "t," to all of which the plaintiff objected and excepted, on the ground that the docket and its entries should speak for themselves as originally made.

Said Rhodes next introduced in evidence the said instruction above set out, so given on the unfinished trial of the issue so made upon the separate answer of Kennedy and Thompson as aforesaid.

It is manifest, we think, from this whole record, that upon the trial of this motion, the question was made to turn in the mind of the judge upon the inspection and import of the above docket entry of the judge and said instruction so given as aforesaid, in connection with the judge's recollection of the evidence as detailed upon the unfinished trial of the issue upon the separate answer of Kennedy and Thompson, above stated. What that evidence was is nowhere shown by the bill of exceptions, or otherwise appears by the record, and could only have existed, if at all, so far as the record showed, in the memory—or as it is sometimes said—in the breast of the judge. It certainly does not appear by the record or any entry or other paper in the cause. The instruction itself is at most hypothetical only. It neither decides, nor undertakes to decide the question of fact propounded. The issue upon which it was given the record shows was not passed upon by the jury or the court, and no finding or verdict was had or rendered thereon. How then could it have appeared to the court, as recited in the order *nunc pro tunc*, that the note in suit was executed by said Jacob M. Rhodes in the firm name, without authority, for his individual debt, and that he alone was liable therefor; except from the judge's

recollection of the testimony so given before the jury on said unfinished trial? That was the question in controversy. It was affirmed on the one side and denied on the other, and never decided. How the truth was remains unknown and undetermined, so far as this record shows. To this issue the defendants Jacob M. and Joseph A. Rhodes were not parties. For some reason, though duly served in time they chose to make no defense, and suffered judgment to go against them by default; and the record shows that upon the dismissal of the cause as to said Kennedy and Thompson, (who alone made defense,) the court proceeded by computation to ascertain the amount due by the note; and it appearing that judgment by default had prior thereto been duly taken and entered of record against both Joseph A. and Jacob M. Rhodes the court proceeded to render final judgment thereon for the amount so found due against both of said remaining defendants.

It is quite manifest, we think, that the judge could only have reached the decision announced from his recollection of what took place at the trial. This it was not competent for him to do, on a motion *nunc pro tunc* at a subsequent term. The record and entries before him certainly do not show the facts. Unless the facts do in some way appear by the record, or some entry or paper in the cause, *nunc pro tunc* entries are not allowable. They cannot be made from outside evidence or from facts existing alone in the breast of the court, at a subsequent term.

Concede that the word "defts." as shown by the judge's docket was, as stated by him, simply his method of writing; and conceding also, as stated by him, that the word as shown by the docket where there was only one defendant, was meant by him to be "deft." and was deft.; yet that is not this case, as the record shows that there were still two defendants remaining in this cause after the same was dismissed as to Kennedy and Thompson. There is no entry of dismissal as to either Jacob or Joseph Rhodes. They were parties to the petition and writ as served and

returned by the sheriff. That service was more than fifteen days before the return term. Neither of them made any appearance or filed any answer or other plea to the action. Judgment by default was regularly taken and entered against both of them, and afterwards made final as to both, as shown by the record. While *nunc pro tunc* entries, in legal contemplation, take the place of the record so amended, the original entry, in point of fact and practice, is not erased from the record or otherwise altered, but suffered to remain as originally made. This, we think, is the usual and correct practice.

Concede, also, as was alleged, and as the evidence tends to show, that the name of Joseph A. Rhodes did not appear in the petition or writ as originally filed and issued, and was afterwards inserted therein, by the clerk, at the request of plaintiff's attorney, by interlineation, but before the same was served on him; yet that fact if true does not show, or even tend to show, under the facts of this record, that the appearance of his name in the judgment was an error of the clerk and not the act of the court. If such irregularity gave him just cause of complaint for any purpose, having been duly served, he should have appeared at the return term, or at least during the progress of the cause, and made his objection. Having failed to do so, he will not be heard to complain at a subsequent term, without showing merits and some good excuse for his neglect to object at the proper time. By his silence he will be deemed to have waived it.

It may be conceded that the rule is well settled in this State, as well as elsewhere, that where the clerk of a court fails to enter a judgment, or enters up a judgment not rendered, instead of one that was, the court has the power to correct the error or omission by having the actual judgment rendered entered up by the clerk at a subsequent term. But in all cases, when *nunc pro tunc* entries are made the record should in some way show, either from the judge's minutes, the clerk's entries or otherwise, the

facts which would authorize the entry. Such entries can-not be made from outside evidence, or from facts existing alone in the breast of the court, after the term at which the judgment was rendered.

It may be conceded, also, that when a judgment is entered up *nunc pro tunc* by order of the court, that the presumption should be (in the absence of any facts shown to the contrary,) in favor of the action of the court and that it was based on competent and sufficient evidence. Yet where the facts fully appear upon which such entries are based, this court will judge of their competency and suffi-ciency, and review any error that may appear to have been made. In all cases, however, the judgment appearing of record, is presumptively the judgment of the court, and not an error of the clerk, and cannot be set aside at a sub-sequent term, on the ground of clerical mistake or mis-prision, unless something in the record, or the judge's docket, or the clerk's minutes or paper on file shows such mistake, and in what it consists. Such we believe to be the doctrine of this court, as fully established by the fol-lowing authorities: *Fletcher v. Coombs*, 58 Mo. 430; *Gibson v. Chouteau*, 45 Mo. 171; *Turner v. Christy*, 50 Mo. 145; *Saxton v. Smith*, 50 Mo. 490; *Exchange National Bank v. Allen*, 68 Mo. 476; *Jones v. Hart*, 60 Mo. 351, 355, 356; *Wooldridge v. Quinn*, 70 Mo. 370. Tested by these rules, it is quite manifest, we think, that the amended judgment *nunc pro tunc*, entered up in this case, was made upon in-competent and insufficient evidence, and for that reason the same is reversed, set aside and held for naught. For the same reason, the order based thereon, recalling said executions and directing the moneys made thereon, to be paid over to said Joseph A. Rhodes, is also set aside and annulled. All concur.