John S. Evans, Respondent, v. John J. Fisher, Appellant.

### St. Louis Court of Appeals, May 31, 1887.

1. Judgments—Interest.—Every judgment in a civil action bears the same rate of interest which the cause of action bore, although it is not so expressed therein.

2. ———— Nunc Pro Tunc Correction.—A person, in whose favor is rendered a judgment which bears a special rate of interest, is entitled to have the record corrected, so as to show the rate of interest borne by the judgment.

3. ———— Distinction Between Clerical and Judicial Errors. Such an omission is a clerical error which may be corrected, *nunc pro tunc*, at a subsequent term, but a miscalculation as to the principal of the judgment is a judicial error which can not be corrected after the lapse of the term.

Appeal from the St. Louis Circuit Court, Amos M. Thayer, Judge.

*Reversed and remanded with directions.*

D. D. Fassett, for the appellant: The court had the power after the term to amend the record. *Gibson v. Chouteau*, 45 Mo. 171; *Groner v. Smith*, 49 Mo. 323; *Turner v. Christy*, 50 Mo. 145; *Henly v. Dewes*, 1 Mo. 16; *DeKalb v. Hixon*, 44 Mo. 341; *Massey v. Sott*, 49 Mo. 278; *Gillett v. Bank*, 56 Mo. 306; *Levison v. Sevan*, 33 Cal. 480; *Smith v. Kennedy*, 63 Ala. 333; *Bank v. Wister*, 3 Pet. 431.

Smith & Harrison, for the respondent: There is nothing to show that any clerical error was committed in entering the judgment in the court below. There is nothing in the record, and no minutes or memoranda of the judge or clerk, to show that any different judgment was, in fact, rendered from that which was, in fact, entered.

*Ross v. Ross*, 83 Mo. 100 ; *The State v. Primm*, 61 Mo.
166 ; Freeman on Judgments (3 Ed. ) sect. 70, pp. 57,
59 ; *Jones v. Hart*, 60 Mo. 351, 355, 356 ; *Dunn v. Raley*,
58 Mo. 184 ; *The State v. Jeffors*, 64 Mo. 376 ; *Wool-
dridge v. Quinn*, 70 Mo. 370 ; *Belkin v. Rhodes*, 76 Mo.
643, 652.

THOMPSON, J., delivered the opinion of the court.

This appeal is prosecuted from an order overruling
a motion to amend the entry of a judgment after the
close of the term at which it was rendered.   The judg-
ment was rendered upon a partnership settlement, in
which the court, confirming the report of a referee, found
a certain amount due to the plaintiff on the partnership
account, and a certain larger amount due to the defend-
ant on certain counter-claims, and rendered a judgment
in favor of the defendant for the excess of the amount
due from the plaintiff to him over that due from him to
the plaintiff.   In this judgment, nothing is said about
the rate of interest which it shall carry.

In support of the motion, the defendant put in evi-
dence, among other things, a portion of the referee's
report,  from which it appeared that the referee had
allowed interest upon the defendant's counter-claim
down to October 1, 1883, which seems to have been the
date to which the account was carried, which interest
was included in the referee's findings and formed a part
of the general balance adjudged in favor of the defend-
ant, by the report of the referee and the judgment of the
court confirming the same.   The judgment recites, among
other things, that "the said report of the referee is in
all things confirmed and established ; and, thereupon, the
court, proceeding, on motion of the defendant's counsel,
to enter judgment herein, according to the findings and
conclusions of the referee upon the questions of law and
fact, doth order, adjudge," etc.   Then follows a recital
of certain facts, and after that, the judgment of the
court, in which the amount found to be due from the

defendant to the plaintiff on the partnership settlement is applied in reduction of the larger amount found to be due from the plaintiff to the defendant on the defendant's counter-claims ; and ending with the recital that "said J. J. Fisher (the defendant) have and recover from the plaintiff, J. S. Evans, the remainder due thereon, to-wit : The sum of $2,346.02, together with his costs and charges herein expended, and have execution therefor," etc.

The object of the present motion is to have the judgment thus rendered corrected, so as to allow interest at the rate of ten per cent. per annum from October 1, 1883, the date to which the referee adjusted the mutual accounts and computed the interest, to the date of the judgment ; and, also, so as to have the judgment corrected so as to show that it bears interest at the rate of ten per cent. per annum. The counter-claims, on which the balance was adjudged in favor of the defendant, consisted of two promissory notes, each of which, as recited in the answer, bore interest at the rate of ten per cent. per annum after maturity ; and the extract from the referee's report indicates that he computed the interest at ten per cent. per annum, according to the tenor of the notes. If this is so, the judgment, which confirmed the report of the referee, as a matter of law, bears interest at the rate of ten per cent. per annum. Rev. Stat., sect. 2725.

I. The rate of interest which a judgment shall bear, is a quality which the statute ascribes to the judgment, and it is not a *necessary* part of the judgment entry ; and where it is not shown by the judgment entry, it is the duty of the clerk to ascertain from the record the interest which the judgment shall bear, and to issue execution accordingly ; and where he refuses to perform this duty, the circuit court can direct him so to do on motion, or the defendant can compel him to do so by mandamus. *The State ex rel. v. Vogel*, 14 Mo. App. 187.

But while a statement of the rate of interest which the judgment is to bear is not necessary to the legal completeness of the judgment in this respect, and while, where the judgment is silent as to the rate of interest, it is the duty of the clerk to ascertain the rate of interest from the record, and to issue execution accordingly; yet, it does not follow from this that the party in whose favor the judgment is rendered is not entitled, where the judgment bears a different rate of interest from the rate prescribed by the general law, to have the entry of judgment so reformed as to show the rate which it does bear. Although it may not be *necessary*, yet it certainly is *proper*, that in such a case the judgment should show the special rate of interest.

A judgment is a record contract. It is to the interest, not only of the litigants themselves, but of all persons who are likely to be affected thereby, that all the terms of such contract should appear by the entry itself. The enforcement of the claim, by execution, is not the only object for which the entry is made. It answers many other purposes under the statute, and it will not admit of question that cases may arise where the omission of the extra rate of interest which a judgment bears, not by force of the statute alone, but by force of the statute in connection with the special matter appearing in the other parts of the record of the cause, will, as between the judgment claimant and third persons, lead to very serious complications. The person in whose favor the judgment is rendered may desire to make it the foundation of an action in another jurisdiction; if so, he ought not to be put to the inconvenience and hazard of proving, by evidence outside of the judgment entry, the special rate of interest which it bears. Our statute provides that a judgment in this city shall be a lien on real estate only from the date it is entered in the abstract book. The theory of the statute is, that, for the purpose of ascertaining incumbrances of this kind, their extent and respective priorities, persons shall look to the

abstract book only. Laws 1881, p. 153. Persons are not expected to hunt up the record itself, much less to determine, at their own peril, from a careful analysis of a complicated record, consisting of claims and counter-claims, as the present one, whether the judgment in fact bears more than six per cent. interest. Our statute also provides that a transcript of a judgment may be filed in another county, and thereby become a judgment lien on the debtor's real estate. Is it supposed that any subsequent incumbrancer in such other county shall be required to look up the original record in all cases for the purpose of determining the extent of such lien? These are only a few instances of the complications likely to arise from denying to the judgment creditor the right, to which, in our opinion, he is clearly entitled, of having the record entry perfected so that it may show what rate of interest the judgment bears.

The case of *Bank of Kentucky v. Wistar* (3 Peters, 432), is directly in point. In that case Chief Justice Marshall, in disposing of a similar motion, says : "The court directs the amendment to be made and the judgment of the court to be reformed, allowing interest at the rate of six per cent. The reason is, that, by rule of this court, where there are no special circumstances, six per cent. interest is allowed upon the amount of the judgment in the court below ; under special circumstances damages to the amount of ten per cent. are awarded by the court. The omission is deemed by the court a mere clerical error."

We accordingly hold, upon this branch of the motion, that, where a judgment bears a different rate of interest than six per cent. per annum, it is usual and proper for the judgment entry to show the special rate which the judgment bears ; that the failure to draw the entry so as to make it show this is to be regarded as an error or misprision of the clerk in the performance of a ministerial duty ; and that the party in whose favor the

judgment is rendered is entitled to have the entry re-
formed by an entry, *nunc pro tunc*, so as to show the
rate of interest which it bears.

II. Upon the second branch of the motion we en-
tertain no doubt that, in entering the judgment, interest
at the same rate should have been calculated upon the
balance found by the referee, from October 1, 1883, to
the date of the judgment. But does it follow from this
that this mistake in entering the judgment is to be re-
garded as a mere mistake or misprision of the clerk,
which can be corrected at a subsequent term; or is it to
be regarded as a mistake of. the judge, which can not
be so corrected ; to use another form of expression, is it a
mistake in the *judgment,* or a mistake in the record ?
If it is a mistake in the record, it can be corrected by an
entry, *nunc pro tunc*, made at a subsequent term, pro-
vided there be sufficient written memoranda to amend
by. But if it was a mere mistake or oversight of the
judge, in not entering the proper judgment, then, no
matter how erroneous the judgment may be, and how
palpable the error may be made to appear by written
memoranda in the court, relating to the cause at the
time when the judgment was entered, it can not be so
corrected. All our decisions unite upon the principle
that, where sufficient memoranda exist in the minutes
of the judge, or in the record or files of the case, by
which to correct an erroneous entry of a judgment,
which entry has been the result of a clerical mistake or
misprision, the entry may be amended at a subsequent
term, so as to express the judgment which was, in fact,
rendered. *Gibson v. Chouteau*, 45 Mo. 171; *The State
v. Clark*, 18 Mo. 432; *Turner v. Christy*, 50 Mo. 145;
*Saxton v. Smith*, 50 Mo. 490 ; *Hyde v. Curling*, 10 Mo.
359 ; *The State ex rel. v. Primm*, 61 Mo. 166; *Jones v.
Hart*, 60 Mo. 351 ; *Robertson v. Neal*, 60 Mo. 579 ;
*Dunn v. Raley*, 58 Mo. 134; *The State v. Jeffors*, 64
Mo. 376 ; *Exchange National Bank v. Allen*, 68 Mo.

474; *Wooldridge v. Quinn*, 70 Mo. 371; *Belkin v. Rhodes*, 76 Mo. 643.

But this is the limit of the rule. "No final judgment can be amended after the term at which it was rendered. The law does not authorize the correction of *judicial* errors, under the pretense of correcting *clerical* errors." Freeman on Judgments [3 Ed.] sect. 69. The court can not, at a subsequent term, under the disguise of amending its record, change the judgment into one which it neither rendered nor intended to render. *Ross v. Ross*, 83 Mo. 100, 102. After the lapse of the term the court, indeed, retains jurisdiction of its *record*, but it has lost jurisdiction of the *cause*. *Exchange National Bank v. Allen*, 68 Mo. 474. The jurisdiction which it retains over its record is limited to the correction of mere clerical mistakes (*Jones v. Hart*, 60 Mo. 351), and does not extend to the correction of errors or irregularities which the court itself may have committed in the rendition of its judgments. The power "does not authorize the entry of an order which *ought* to have been made, but only those which were *actually* made, the evidence of which is preserved by some minute made at the time." *The State v. Jeffors*, 64 Mo. 376, 378. "It is the duty of the clerk to enter up the judgment which the court renders, no matter how erroneous or illegal that judgment may be. It is not for the clerk to note the errors of the court and correct them. Whenever the clerk enters the judgment which the court has rendered, it can not be said that he has entered up the wrong judgment; and the legal presumption is, that the clerk did his duty, and that the judgment entered by the clerk is the judgment which was rendered by the court." *Wooldridge v. Quinn*, 70 Mo. 371. "In all cases the judgment appearing of record, is, presumptively, the judgment of the court, and not an error of the clerk, and can not be set aside at a subsequent term, on the ground of clerical mistake or misprision, unless something in the record, or the judge's docket, or the clerk's minutes or

papers on file, shows such mistake, and in what it consists." *Belkin v. Rhodes*, 76 Mo. 652. These decisions show that the power to amend the record is limited to making the record conform to the fact, that is, to making it express the judgment which was actually rendered.

Testing the present case by these principles, it does not appear that the circuit court committed error in refusing to make this amendment, so far as it relates to the *amount* of the judgment. It does, indeed, appear that the circuit court *ought* to have rendered such a judgment as the judgment which it did render would have been, if interest, at the rate of ten per centum per annum, from October 1, 1883, to the date of the judgment, had been incorporated in it. But it nowhere appears th at the court *did* render such a judgment. It does, indeed, appear that the court *intended* to render the proper judgment, in conformity with the report of the referee, and the proper judgment would have given the defendant the additional interest which he claims. But it does not appear that the report of the referee *recommended* a judgment embodying such interest. If the report had contained such a recommendation, it is possible, in view of the recital in the judgment, which confirms and establishes in all things the report of the referee, that we might regard the failure of the judgment entry to embody the recommendation of the referee as a clerical misprision, amendable at a subsequent term. But, as the referee's report is not shown to have contained such a recommendation, we must hold that the judgment *was merely erroneous*, in not allowing interest according to the statute, and that the error was an error of the judge, and not an error of the clerk. The mere fact that a judgment is not such a judgment as the governing statute authorizes will not warrant the entering of the proper judgment at a subsequent term, *nunc pro tunc. Wooldridge v. Quinn*, 70 Mo. 370.

All the judges concurring, the judgment of the circuit court is reversed and the cause remanded, with directions to reform the entry of judgment, by an entry, *nunc pro tunc*, as of its original date, so as to show that it bears interest at the rate of ten per cent. per annum.