GEORGE B. COLLIER, MAGGIE PATTERSON, JOHN E. O'BANNON, JOHN H. CHITWOOD and VIRGINIA F. HOLLADAY, Appellants, v. CATHERINE LEAD COMPANY and GERMANIA TRUST COMPANY.

Division One, December 24, 1907.

1. **EXCEPTIONS: In Motion for New Trial.** It is not incumbent on appellants to save their exceptions in the motion for a new trial. If specific objections are made and exceptions saved to the action of the trial court in the admission or exclusion of evidence, at the time the rulings are made, then a general assignment in the motion for a new trial, as, "The finding is unsupported by the evidence," is sufficient.

2. **ASSIGNMENT OF ERRORS.** The appeal will not be dismissed because appellants' brief contains no "Assignment of Errors," if it contains a succinct statement of "Points," followed by authorities in support thereof.

3. **ABSTRACT OF RECORD: Special Judge: Sufficient Showing of Authority.** An abstract of the record entry calling in a special judge to try the case, which simply states that "the case was tried before Hon. Samuel Davis, judge of the fifteenth district, the Hon. R. A. Anthony, judge of the twenty-seventh district, being disqualified from sitting," is not sufficient; but where another record entry in reference to the filing of the bill of exceptions is set out in the abstract, in which it is stated, "Plaintiffs file their bill of exceptions in the above-entitled cause duly signed by Hon. Samuel Davis, judge of the Fifteenth Judicial Circuit, the trial judge in the case," that will be held to state that Judge Davis did try the cause, and if it nowhere appears in the record that objection to the trial of the case by him was made, the abstract, on that point, will be held sufficient.

4. **ABSTRACT: Incomplete.** The appeal will not be dismissed on the ground that "the abstract fails to set out so much of the record as is necessary for a full understanding of all questions

presented to this court for decision," even in an equity case, where, though the abstract is not up to the full measure of the rule, such summary dismissal would seem harsh.

5. **SUMMONS: Several Defendants: In Different Counties: Copy of Petition.** The statute (R. S. 1899, sec. 570), which says that where there are several defendants, process may be served "by delivering to the defendant who shall first be summoned a copy of the petition and writ, and to such as shall be subsequently summoned, a copy of the writ," does not now, nor did it in 1887, require a copy of the petition to be delivered to the first defendant served in each county. It simply requires a copy of the petition to be delivered to the first defendant served, and if that is done, a summons of the others, whether they reside in that or some other county, by delivering them a copy of the writ, is sufficient. Nor is the method of service changed by section 574, Revised Statutes 1899, which permits plaintiff, in the exercise of his judgment, to have several writs issued, instead of one.

6. ————: ————: ————: **Burden: Bill of Exceptions.** The burden is on the party attacking a judgment in partition, on the ground that he was not served with a copy of the petition, to show that he was the first party served; and, hence, if he is appellant on appeal, and insists that the bill of exceptions does not show that the summons and return thereon, showing service first on another defendant in that partition suit, was not offered in evidence, the court will not, in response to respondent's motion, order up a copy of the transcript to verify the service first on that other defendant, for it was the duty of defendant, if he wished to show that a service on him by copy of the writ alone was not a valid service, to show, in addition, that the other defendant was not the first defendant served.

7. **NUNC PRO TUNC ENTRIES: Notice.** Where all the parties were properly before the court in the partition suit, notice to the defendants of *nunc pro tunc* entries made at a term three years later, by which record entries of the decree, order of sale, and of succeeding steps following the filing of the report of sale, were made, is not necessary. *Nunc pro tunc* entries are made from evidence furnished by records in the case, and not from parol or controvertible evidence, and hence notice is not necessary.

8. ————: ————: **In Partition: Final Judgment.** Where the last entry in the partition suit shows the report of sale was filed and the cause continued for distribution, there was no final judgment, and hence no notice was required, to any parties properly before the court, for *nunc pro tunc* entries of the decree, order of sale, filing and approval of report of sale, acknowledgment of sheriff's deed, etc.

9. **PARTITION: Copy of Order of Sale: Not Entered of Record.** It does not follow that because the order of sale in a partition suit was not spread upon the record, no certified copy thereof could be delivered to the sheriff and that he was without authority to sell until the order or decree was spread of record. If the decree and order of sale was prepared and approved, a sale made in pursuance to a certified copy thereof delivered to the sheriff was not made without authority.

10. **NUNC PRO TUNC ENTRIES: Authority: No Record or Files.** Because the record books and files, as found in the office of the clerk twelve years afterwards, fail to reveal sufficient facts for the making of the *nunc pro tunc* entries at the time they were made, is no sufficient reason, in a collateral proceeding, for holding that they were not based upon proper record recitals and memoranda.

11. ———: ———: **No Contrary Showing: Rights of Others.** Where the judgment *nunc pro tunc* recites that the *nunc pro tunc* entries were made upon proof "from the minutes and records of this court and by proper record evidence," it will not be held, against the rights of third parties acquired in good faith between the time of the original decree and the judgment *nunc pro tunc*, when collaterally attacked, that it was not authorized by proper record evidence, in the absence of any showing that the records and files produced in evidence at the time of the attack upon that judgment were all the files and record evidence before the court at the time it was made.

12. ———: ———: **Order of Distribution: No Final Judgment.** Where the last record entry in the partition cause was an order of distribution and a continuance, there was no final judgment, but simply the interlocutory judgment, and the cause is still pending for final judgment, even for three years afterwards, and at any time before final judgment the court has power to make any amendment in its prior records, either by *nunc pro tunc* entries on motion of the parties, or of its own motion, to make the record recite the truth.

13. ———: ———: ———: ———: **Collateral Attack.** And a final judgment, authoritatively made, unappealed from, is not subject to collateral attack.

Appeal from Madison Circuit Court.—*Hon. Samuel Davis*, Special Judge.

AFFIRMED.

*John C. Brown* and *J. H. Chitwood* for appellants.

(1) The court erred in admitting in evidence the sheriff's deed in partition to Firmin Desloge, through whom defendants claim title. Benton County v. Morgan, 163 Mo. 675; Westmeyer v. Gallenkamp, 154 Mo. 28; Warner v. Manwaring, 173 Mo. 38; Evans v. Snyder, 64 Mo. 516; Hughes v. Hughes, 72 Mo. 138; Carson v. Hughes, 90 Mo. 173; Stafford v. Adams, 113 Mo. App. 721; Freeman on Void Judicial Sales, secs. 23 and 43; Railroad v. Holschlag, 144 Mo. 253; Young v. Young, 165 Mo. 630; Burnham v. Hitt, 143 Mo. 421; Becher v. Deuser, 169 Mo. 159; State v. Gartrell, 171 Mo. 504; Ross v. Railroad, 141 Mo. 391; Hansbrough v. Fudge, 80 Mo. 307; Dunn v. Raley, 58 Mo. 134; Fletcher v. Combs, 58 Mo. 430; Saxton v. Smith, 50 Mo. 490; Page v. Chapin, 80 Mo. App. 159; State ex rel. v. Baldwin, 109 Mo. App. 573; State v. Ryan, 115 Mo. App. 414; Hewitt v. Steel, 118 Mo. 473; Rorer on Judicial Sales (Ed. 1873), sec. 336; Bowman v. Field, 9 Mo. App. 576. (2) The court erred in finding that plaintiffs have not title to the property in controversy. The finding and judgment of the court are not supported by the evidence. Lemon v. Board, 108 Mo. 235; Laney v. Garber, 105 Mo. 355; Feuert v. Caster, 174 Mo. 289; Westmeyer v. Gallenkamp, 154 Mo. 28; R. S. 1879, secs. 3374 and 3489; Clark v. Sires, 193 Mo. 502. (3) In this partition suit of Desloge v. Janis, Gregorie, et al., the court attempted to acquire jurisdiction of the defendants by separate writs of summons issued to the several counties where said defendants resided. This service is clearly void because no copy of the petition in the partition suit was served on or delivered to Allison Collier (the first defendant served) nor to any of the defendants upon whom said sheriff attempted to serve said writ. Laws 1881, p. 274; Westmeyer v. Gallenkamp, 154 Mo. 28. It will not do to say that a copy of the petition had been delivered to some other

defendant on a separate writ of summons issued to some other county. Where separate writs of summons are sued out by a plaintiff, as was done in this partition suit, a copy of the petition must be served with each of said writs. In this case the pretended service was upon a minor living about 200 miles from the place of trial and no copy of the petition being served and plaintiff Collier, as his depositions disclose, being ignorant of the fact that he had inherited any interest in the land, and no copy of the petition being left in the county whereby he could ascertain what the suit meant, it was but natural that he ignored the attempted service and gave the suit no attention. (4) Upon the unchallenged evidence of both defendants and plaintiffs, it is proven that when the sale, upon which said sheriff's deed is based, took place, there was no judgment of record directing such sale and consequently it was physically impossible for the sheriff to have had a certified copy of an order of sale, and not having such certified copy, his pretended sale is a nullity. Benton County v. Morgan, 163 Mo. 675; Hughes v. Hughes, 72 Mo. 138; Heyman v. Babcock; 30 Cal. 367. (5) The trial judge seemed to think that, because ex-sheriff Spiva testified that in making the sale he had an order of sale in his possession, this oral testimony entirely dispensed with the necessity of a recorded judgment, notwithstanding the well-known rule that courts of record can be known only by their records. Mobley v. Nave, 67 Mo. 549; Milar v. Pemberton, 12 Mo. 598; Maupin v. Franklin County, 67 Mo. 329. (6) Plaintiffs proved that there was no entry made in any of the records in the circuit clerk's office at the March term, 1888, and no paper filed at said term in said cause. Also that no notice was given of the application for the *nunc pro tunc* judgment. Therefore said judgment is a nullity, because there was nothing upon which it could be based. State ex rel. v. Baldwin, 109 Mo.

App. 578; Railroad v. Holschlag, 144 Mo. 253; Page v. Chapin, 80 Mo. App. 160; Young v. Young, 165 Mo. 630. (7)  Defendants introduced a vast lot of record entries, pleadings and even unfiled papers in an effort to show some foundation for the *nunc pro tunc* judgment, but the most searching examination of same will not disclose a single paper filed nor a word written on any of the records of this court at the March term, 1888, in the aforesaid partition suit.  State ex rel. v. Baldwin, 109 Mo. App. 578; Railroad v. Holschlag, 144 Mo. 257.  (8)  At the time the sheriff executed the deed to Firmin Desloge there had been no approval of the sheriff's report, or anything indicating a confirmation of the sale entered of record, and the sheriff was, therefore, unauthorized to execute the deed. Rorer on Judicial Sales (Ed. 1873), sec. 336; Freeman on Void Judicial Sales, sec. 43; Clark v. Sires, 193 Mo. 516.

*Edward D'Arcy* for respondents; *W. T. Hughes* of counsel.

(1)  A sheriff's deed in partition is a bar, after final judgment, to all the parties to the action.  R. S. 1879, sec. 3376; R. S. 1899, sec. 4410; Forder v. Davies, 38 Mo. 107; State v. Buck, 120 Mo. 494; State v. Thomas, 47 Conn. 546; Pillow v. Roberts, 13 How. 472. (2)  The introduction in evidence of a sheriff's deed in partition  makes a prima-facie case.  Latrielle v. Dorleque, 35 Mo. 233; Bray v. Adams, 114 Mo. 86.  (3) Proceedings in partition are binding and conclusive on all parties to the record, and those claiming under them.  Pentz v. Kuester, 41 Mo. 447.  (4)  In a collateral proceeding to nullify a judgment, presumptions are all in favor of the validity of the judgment and sale.  Kane v. McCown, 55 Mo. 196; Brawley v. Ranney, 67 Mo. 283.  (5)  The judgment of the court imparts absolute verity.  Latrielle v. Dorleque, 35 Mo.

233; Johnson v. Kerkhoff, 35 Mo. 291. (6) During the pendency of proceedings, and until the final judgment is rendered, the court has complete control over its records, and may alter or amend them, as justice requires. 1 Bouv. Dic. 199; 3 Bla. Com. 407; Saxton v. Smith, 50 Mo. 490; McClellan v. Binkler, 78 Ind. 803; Aull v. Day, 133 Mo. 337; Gudgell v. Mead, 8 Mo. 54; Bobb v. Graham, 89 Mo. 207; Akers v. Hobbs, 105 Mo. 132; Bryant v. Russell, 127 Mo. 433; Elliott, App. Proc., sec. 83; Black on Judgments, sec. 308; McClellan v. Binkley, 78 Ind. 803. (7) The rule is that after the expiration of the term the court cannot amend the judgment in any manner of substance, but this rule applies only to final judgments, and has no reference to a judgment or order which does not put an end to the proceedings, as in case of interlocutory judgments in partition, such as an order of sale. 17 Am. and Eng. Ency. Law (2 Ed.), 816-818. (8) A judgment *nunc pro tunc* may be based, not only on the court records, but on any paper in the case. Williams v. Walton, 84 Mo. App. 433; Hayden v. Alkire Co., 88 Mo. 241. (9) And when, after the lapse of years, papers are, or may be, missing, a presumption will be indulged in, favorable to the trial court, that the papers were before it when the *nunc pro tunc* order was made. Bray v. Adams, 114 Mo. 486. (10) The record of a court of general jurisdiction cannot be impeached in a collateral action. Crim v. Kessing, 89 Cal. 478; Sanford v. Sanford, 28 Conn. 6; Littleton v. Cross, 3 B. & C. 327; Moore v. Starks, 1 Ohio St. 369; Richards v. Skiff, 8 Ohio St. 686; Broom's Legal Maxims, 427; Spieres v. Parker, 1 T. R. 145; King v. Lynne, 1 Doug. 159; King v. Nottingham, 6 A. & E. 355; Wright v. Marsh, 2 G. Greene (Ia.) 94; Shumway v. Stillman, 4 Cowen 294; Mills v. Martin, 9 John. 33; Thomas v. Robinson, 3 Wend. 267; Peacock v. Bell, 1 Saund. 73; Wheeler v. Raymond, 8 Cow. 311; Smith v. Rhoads, 1

Day 168; Granger v. Clarke, 9 Shep. 128; Van Dyke v. Bastedo, 3 Green 224; Cole v. Hall, 2 Hill 627; Freeeman on Partition (2 Ed.), secs. 528, 548. (11) Every presumption is to be indulged in favor of the validity of the judgment and sale thereunder. Especially is this true where such a length of time has elapsed as in this case. Davis v. Green, 102 Mo. 170; McClanahan v. West, 100 Mo. 309; Williams v. Mitchell, 112 Mo. 300; Brown v. Oldham, 123 Mo. 631. (12) Where the defect sought to be removed by *nunc pro tunc* proceedings appears of record or in the files, no notice of the application to the opposite party is necessary. Loring v. Groome, 110 Mo. 632; Long v. Stafford, 103 N. Y. 274; Allen v. Bradford, 3 Ala. 281; Bentley v. Wright, 3 Ala. 607; Fuqua v. Carriel, 12 Am. Dec. 46; Glass v. Glass, 24 Ala. 468; Naher's Adm. v. Meredith, 67 Ala. 333; Black on Judgments, sec. 134; Freeman on Judgments, sec. 64; Crim v. Kessing, 89 Cal. 498; Portis v. Talbot, 33 Ark. 218; In re Cook, 77 Cal. 220; Parkinson v. Caplinger, 65 Mo. 290. (13) The recital by the final judgment that the parties were present in court is conclusive on them. Warren v. Williams, 25 Mo. App. 22.

GRAVES, J.—Action in the circuit court of Madison county. The first count of the petition filed by the plaintiffs is an ordinary action to ascertain, define and quiet title under section 650, Revised Statutes 1899. By the second count of the petition plaintiffs aver that they own the land therein described, and described in the first count; that for farming purposes the land is not worth more than one thousand dollars, but that it is underlaid with different minerals of the aggregate value of one million dollars; that defendants are mining and removing the said minerals and converting the same to their own use and threaten to continue so to do; that by reason thereof plaintiffs' land will be rendered

valueless; that said trespasses will necessitate a multiplicity of suits to collect damages; that said trespasses, if continued, will render ineffectual the suit to quiet title, as stated in the first count and will cause plaintiffs irreparable injury. The prayer was for an injunction or restraining order as to defendants' acts in removing and mining ore from the land in question.

The answer in the first count admits the possession of the land in question to be in defendants, admits that for grazing and agricultural purposes it is of but little value, not exceeding one thousand dollars, and denies each and every allegation of the petition.

By the second count the ten-year Statute of Limitations is pleaded.

By the third count it is pleaded that defendants obtained possession in good faith in 1891, from the owner of the record title, who was in the open, notorious and peaceable possession thereof, and that without any notice of the pretended claim of the plaintiffs, and relying upon their said title, and in absence of any notice of the claim of plaintiffs, defendants have made valuable improvements thereon to the extent of $150,-000, which said improvements were made with the knowledge of plaintiffs and all others in the vicinity and that plaintiffs by their silence acquiesced therein, and are and should be now estopped from claiming any title or interest in the said lands.

By a fourth clause in the answer it is pleaded that the alleged claim of plaintiff Chitwood came to him by a deed for an inconsiderable consideration from one Samuel E. Hoffman; that one Firmin Desloge, one of the then owners of said land, in July, 1887, instituted suit for the partition of said lands against all of the parties having an interest therein, including the said Hoffman; that said lands were duly partitioned and sold by the sheriff under a decree in said cause, and that one Frank Schulte, relying upon said proceedings

Collier v. Lead Company.

and upon the sheriff's deed and upon the knowledge of Hoffman in regard thereto, purchased said lands at such partition sale, and received and accepted the sheriff's deed thereto, and immediately after such sale, September 25, 1888, went into the open, exclusive, and notorious possession of said land, and that such possession continued in such Schulte and his grantees and successors to the time of the suit, the last of such successors to the Schulte interest and title being the defendants; that all these things were of common knowledge; that neither said Hoffman nor any of the plaintiffs herein made any claim to said land for sixteen years; that plaintiff Chitwood had knowledge of all these facts when he purchased of Hoffman for the trivial sum of $50, well knowing that Hoffman had no claim to said land and made no claim to said land; that the deed from Hoffman to Chitwood is *champertous* and void. The prayer is that such deed be declared void; that the title to said land in dispute be declared to be in the defendants, and for such other and proper equitable relief.

The reply admits that Hoffman owned an interest in the land in July, 1887, avers his sale thereof to Chitwood for a valuable consideration, and then denies all other new matter pleaded in the answer.

Trial was had before Hon. Samuel Davis, as special judge, and judgment was for defendants, from which the plaintiffs appeal.

Defendants have filed a motion to dismiss this appeal, which motion was by this court taken with the case, and is therefore for disposition before we reach the merits of this matter.

Counsel for defendants, in their brief on the motion to dismiss the appeal, summarize their reasons thus:

"(1) For failure of appellants to save their ex-

ceptions by a proper motion for a new trial in the trial court.

"(2) For failure of appellants to save their exceptions by an assignment of errors in this court.

"(3) For failure of appellants' abstract to show that the proceedings in the court below were *coram judice*.

"(4) For failure of appellants' abstract to set forth so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for decision."

## OPINION ON MOTION TO DISMISS APPEAL.

I. Considering the first objection herein above stated. The motion for a new trial is general in its terms. It is short and we will quote it. The grounds assigned therein are as follows:

"That the findings should be for plaintiffs instead of defendants. That the finding is unsupported by the evidence. That the verdict is for the wrong party. That the court erred in admitting over plaintiffs' objection illegal, incompetent and improper evidence on the part of the defendants. That under the law and the evidence the findings should have been for the plaintiffs."

It is not necessary to review the many cases cited from other jurisdictions. The practice in this State has never, of recent years, required the motion for new trial to point out specifically the evidence excluded or evidence admitted, alleged to have been erroneously excluded or admitted. Under our practice it is sufficient, if at the time of the exclusion or admission of such evidence, proper objections were made and exceptions saved, and this followed by a general assignment of error in this regard in the motion for new trial. Such have been the last expressions of this

court, and we see no good reason for a further review of the question.

In State v. Barrington, 198 Mo. l. c. 76, this court, In Banc, adopted the opinion of Fox, J., in Division, and in doing so, we there said: "Upon this complaint the Attorney-General insists that the ground of defendant's motion for new trial, that is, that 'the court erred in admitting illegal, irrelevant, incompetent and immaterial testimony,' does not cover or exclude the point of improper cross-examination of defendant. Upon this proposition we will say that, if the objections at the trial were sufficiently specific to notify the trial court at the time of the nature and character of the objections and the reasons for them, the general assignment in the motion for new trial, that the court improperly admitted illegal, incompetent and irrelevant testimony, would properly preserve the point of improper cross-examination for review in this court."

Again, in State v. Noland, 111 Mo. l. c. 492, this court said: "The motion for a new trial does not specify the exclusion of this particular evidence, but assigns generally as error that 'the court excluded from the jury proper, competent and relevant testimony offered by the defendant.' This was sufficient. It has been the practice of this court from its organization. Nothing more definite has ever been required. A different ruling would unsettle the practice and work great injustice. The objections to testimony must be specific to be available in the appellate courts. These exceptions thus made are saved at the time, and the trial court's attention specifically called to its rulings, and no injustice is done the opposite side or the court by not incumbering the motion for new trial with these matters a second time. We adhere strictly to the rule requiring specific objection to testimony to be made at the time it is offered, but we do not think

208 Sup—17

any good would be subserved by requiring the specific objections to be again repeated in the motion for a new trial.''

There may be cases where the language used, taken apart from the real situation presented by the case, might indicate a different rule, but when we read these cases thoroughly, the language indulged in by the court will find justification in the particular record, without infringing upon the rule announced in the Noland case, supra.

We announce again that if objections are made and exceptions saved to the action of the trial court in the admission or exclusion of testimony, then the general assignment in the motion is sufficient.

The motion before us, however, challenges the sufficiency of the whole testimony to sustain the decree. The language used is: ''That the finding is unsupported by the evidence.'' This, of itself, is sufficient. [McCloskey v. Pulitzer Publishing Co., 163 Mo. 1. c. 31.] There the language was, ''The verdict was wholly unwarranted by the testimony.'' There is nothing in this contention of the defendants and this point will be ruled against them.

II.     The next point made by this motion is that there are no assignments of errors in the brief as required by our Rule 15. There is no separate assignment of errors, but under the head of ''Points and Authorities'' we have the following:

''1.     The court erred in admitting in evidence the sheriff's deed in partition to Firmin Desloge, through whom defendants claim title.

''2.     The court erred in finding that plaintiffs have no title to the property in controversy. The finding and judgment of the court are not supported by the evidence.

''3.     The plaintiffs are not barred by the Statute of Limitations.

"4.   The appellants are not estopped from maintaining this action."

Following each of the above is a long list of cases cited as the ones relied upon to sustain the point. Then follows that portion of the brief under the heading "Argument," in which the authorities cited under the previous points are discussed and reviewed, and applied to the case at bar.   This we think a sufficient compliance with the rule.   Many lawyers do, and it is the better practice, to make an "Assignment of Errors" separate and apart from their "Points and Authorities" and their "Argument," thus making four subdivisions of their brief, i. e., statement, assignment of errors, points and authorities, and argument.   The brief attacked in this instance omits the second subdivision, last above given, but has the other three.   We think this is sufficient and this point must be ruled against the defendant.

III.   We come now to the third assignment in this motion, which is in this language:

"(3)   For failure of appellants' abstract to show that the proceedings in the court below were *coram judice*."

The contention here is that the abstract of record does not show any reason for the trial of this cause by Judge Davis, instead of the regular judge of that court.   Upon this point, the abstract before us says: "This action was brought on August 19, 1903, by plaintiffs against defendants to quiet title to and restrain defendants from trespassing upon lot 4 of northwest quarter of section one, township 33, range 6 east.   The case was returnable to the September term, 1903, of the Madison Circuit Court, and was tried on October 9, 1903, before Hon. Samuel Davis, judge of the 15th District, the Hon. R. S. Anthony, judge of the 27th District, being disqualified from sitting.

A finding was made and a judgment was rendered in favor of defendants and plaintiffs bring the case to this court by appeal.''

The point made here is couched in  this language by counsel for defendants:  ''There is a statement of fact by the appellants, but no statement as to whether the record does or does not show this transfer of jurisdiction from Judge Anthony to Judge Davis.''

This is one thing which distinguished counsel have couched in plain English.  In our youth we studied Latin, but always enjoyed a proposition when stated in short, concise terms in our mother tongue.  Defendant's brief has been a little prolix in the many foreign phrases used largely by the old law-writers, but discarded very largely by the scholars and writers of the present, even in the law books.

The point made here is that this language quoted from the abstract of record, does not show or recite that the record in the lower court shows a change from Judge Anthony to Judge Davis.  That it is not an abstract of the record, but a mere statement of what the plaintiffs (appellants) conceive to be a fact. Does this abstract show such facts as should be shown, in order to show the right of Judge Davis  to try this cause?  An answer to this question disposes of this contention.  In this abstract of record we find the following:

''On the 13th day of January, 1904, before the first day of the  regular March term, 1904, of this court and within the time granted, allowed and extended by this court to them to prepare, have signed and file their bill of exceptions herein, come the plaintiffs and file their said bill of exceptions, the order noting and recording the filing thereof being in words and figures, as follows:

'' 'Circuit Court of Madison County, Mo., In Vacation.  January 13, 1904.

" 'G. B. Collier et al.

   vs.

Catherine Lead Company.

" 'Now at this time in vacation come plaintiffs and file their bill of exceptions in the above cause duly signed by Hon. Sam Davis, judge of the 15th Judicial Circuit, the trial judge in this case.

" 'Geo. B. Cook,
                 Clerk Circuit Court.' "

The two excerpts given are all that appear tending to show the right of Judge Davis to try this cause, or that he in fact did try it. The sufficiency of these therefore become the material question upon this issue.

The right of Judge Davis to try this cause must appear from the record proper, and not from a mere recital thereof in a bill of exceptions. This record proper should be abstracted. As to what is meant by an abstract of the record we have recently gone over in the case of Harding v. Bedoll, 202 Mo. 625. We there said that it was not necessary to set out a copy of the record, but that it was sufficient to recite the facts that were shown by the record, stating that such facts were shown in the record by proper entries. Judge Davis could not have been there save and except through the provisions of our statute contained in sections 1678 to 1685, both inclusive, or by virtue of sections 818 and 819, Revised Statutes 1899. Section 1685 provides: "Whenever, under the provisions of this article, a judge of another circuit may preside, or temporary judge be elected, an entry thereof shall be made on the records of the court, together with the reasons therefor; and, in case of a temporary judge being elected, the fact that the requisite oath has been taken and filed."

Section 819, under the change of venue statute, is as follows: "If the judge is interested or related

to either party, or shall have been of counsel in the cause, the court or judge shall award such change of venue without any application from either party, unless all the parties in the cause consent that such judge may sit on the trial thereof, or a special judge for the trial thereof be agreed upon by the parties, or elected in the manner provided by law.''

Under either section a record entry is required. This record entry should be properly abstracted. Does the recitation first quoted from this abstract purport to abstract a record of the circuit court of Madison county? We think not. This excerpt from the abstract does not say that the records of the circuit court of Madison county show anything in this regard. It does not say that Judge Anthony made any record prior to the appearance of Judge Davis upon the scene of action. If Judge Anthony was disqualified by interest or otherwise as suggested by section 819, supra, there is or should be a record of such action upon the part of Judge Anthony and that record should have been abstracted as indicated by us in Harding v. Bedoll, supra. If on the other hand, Judge Davis as judge of another circuit, was called in to hold a term or part of term of court, by Judge Anthony, as contemplated by section 1678, Revised Statutes 1899, then an entry of record should have been made as required by section 1685, supra, and this entry should have been abstracted, as we have undertaken to set out in detail in Harding v. Bedoll, supra. This abstract does not aver that such entries, or either of them were made in the circuit court of Madison county, but simply avers as a substantive fact that the case was ''tried before Hon. Samuel Davis, judge of the Fifteenth District, the Hon. R. S. Anthony, judge of the Twenty-seventh District, being disqualified from sitting.'' This statement of counsel in the abstract does not even say that the record of the circuit court shows the dis-

qualification of Judge Anthony. In fact counsel do
not aver that there is such a record and undertake to
abstract such record. In this there is a fatal defect
in the abstract before us unless it is cured by the ex-
cerpt last quoted. By this statement from the vaca-
tion record, it appears that a bill of exceptions in this
cause was filed, and that such bill of exceptions was
"duly signed by Hon. Sam. Davis, judge of the Fif-
teenth Judicial Circuit, the trial judge in this cause."
Here is a recitation from a vacation order that Judge
Davis was the trial judge of said cause, or at least
acted as trial judge.

The same question was up in the case of Green v.
Walker, 99 Mo. 68. In that case, we said: "The bill
of exceptions, filed during the February term, 1886
(at which the final judgment was rendered), is part of
that record. It is signed by John E. Wait, as special
judge, and recites that the cause was tried before him
in that capacity. How he came to be special judge, or
whether he ever was sworn, generally, or in that case,
does not affirmatively appear. His actions as special
judge are part of the records of this court, however,
and, in the absence of any showing to the contrary,
will be presumed to have been correctly taken."

In the Green case we had before us the bill of ex-
ceptions as signed in the manner indicated in the above
excerpt. In the case at bar we have the full copy of
the vacation entry made by the clerk, reciting the facts.

In Nickerson v. Leader Mercantile Co., 90 Mo.
App. 338, it is said: "That since the cause was tried
by a special judge and nothing appearing on the face
of the record to show why he had tried it instead of
Judge Hazell, who was the regular judge, such special
judge was without jurisdiction. There is no abstract
in the case, of the record proper, or if there is then
there is no statement as required by the statute (sec-
tion 863). That which the defendant entitled an 'ab-

stract' does not purport to be more than an epitome of a part of the record. Blended with it are statements of many conclusions, but these, when taken with the part of the record which is abstracted, do not present a complete abridgment or abstract of the entire record. But waiving any objection that might be taken to the sufficiency of the abstract presented, still can we say that the special judge had no jurisdiction because the record does not disclose how it came about that the cause was tried by him? The action of the special judge trying the case is a part of the record of the court and in the absence, as here, of any showing to the contrary, it will be presumed to have been correctly taken. The same presumption of jurisdiction attaches to the record of proceedings in circuit courts before special judges as before the regular judge. [Green v. Walker, 99 Mo. 68.] The abstract of the bill of exceptions does not anywhere disclose that objections of any kind were taken by defendant in the circuit court to the qualifications or authority of the special judge to act. No reason is seen why the jurisdiction of the special judge who tried the case should be seriously doubted.''

The record before us is very similar. It nowhere shows any objections to the trial of the cause before Judge Davis. So that while the first part of this record, by proper abstract thereof, shows no record entry by which Judge Davis was authorized to act, yet the later entry which appears in the abstract in full, does show that as a matter of fact, he did act as special judge, and so far as the record before us is concerned, without objection.

This we think sufficient, and such being our judgment, this contention of defendant is overruled.

IV. Lastly it is urged that the appeal should be dismissed because the printed abstract fails to set out so much of the record as is necessary for a full and

complete understanding of all questions presented to this court for decision. We have examined the printed abstract with care in view of this contention, and while we are constrained to say that the abstract is not up to the full measure, we hardly feel that it is so defective as to authorize a summary disposal of the case upon this motion. The plaintiffs concede that the pleadings make the case one of equitable cognizance. In such case it is the duty of the appellant to bring to this court all of the evidence. There are evidently some omissions in this regard in the abstract before us, but they are hardly such as would justify the harsh action called for in the motion to dismiss. This point will, therefore, be ruled against the defendant.

It therefore follows that the motion to dismiss this appeal should be and is overruled.

## OPINION ON THE MERITS.

Going to the merits of this case, an additional statement of facts is required. The land in dispute here is lot 4 of the northwest quarter of section 1, in township 33 north, of range 6 east, in Madison county. In 1850 this property was owned by James Hill, John Hill and Henry Janis, all of Madison county, Missouri. They each had an undivided one-third interest therein and were tenants in common. These same parties likewise had and held in the same manner lot 3, and the west half of lots 1 and 2, of the same quarter section. These two tracts of land whilst held by the three parties in the same manner came to them through different deeds and different chains of title. In 1887 one Firmin Desloge, as plaintiff, instituted a suit in the circuit court of Madison county against Odile Janis et al., defendants, the object of which was to partition all of the lands above described. All the plaintiffs in this suit were made parties defendant by the petition in that case. It is claimed that at the March term,

1888, of that court, an order of sale was made in this partition suit, and that in pursuance of said order the sheriff of said county, at the September term of the court, sold the lands above described, the said Firmin Desloge being the purchaser of the said lot 4, and one Frank Schulte the purchaser of the remainder of said lands. The defendant herein holds by *mesne* conveyances from these two purchasers at said sale. Report of sale was made and deeds made to the purchasers at that time. In 1891 it seems to have been discovered that no record entry of the decree of partition and order of sale had been made, nor had there been record entries of the succeeding steps in said case, except a record entry showing the filing of the report of sale and one showing the allowance of an attorney's fee to be taxed as costs, and thereupon the plaintiff in said cause filed a lengthy petition or motion reciting all the facts and steps taken, and asked that all the necessary decrees, entries and orders be made *nunc pro tunc* and that an additional order of distribution be made. This was done without further notice to the parties defendant. After hearing this application, the court made six orders, decrees and judgments *nunc pro tunc,* as follows:

No. 1.   Order showing proof of publication on certain non-resident defendants.   This order was made as of the March term, 1888.

No. 2. Decree of partition and order of sale as of March term, 1888.

No. 3.   Record showing the filing of reports of sale, showing payment of purchase price, approval of the reports and ordering deeds made to the purchasers.   This order is as of the September term, 1888, and on September 26, 1888.

No. 4.   Record entry, showing acknowledgment of the deed by the sheriff to Schulte.   This order as of date, September term, 1888, and on October 2nd, 1888.

No. 5. Same record as to deed to Desloge, except that it is of date October 3rd, 1888, instead of October, 2nd.

No. 6. Order of distribution as of September term, 1888.

The case is therefore *nunc pro tunc* at wholesale as well as retail.

In the judgment for these six entries *nunc pro tunc,* among other things it is recited that these said orders, decrees, judgments and entries *nunc pro tunc* are made upon a showing to the court by the plaintiff, that such entries *nunc pro tunc* should be made, because the plaintiff has shown, ''to the satisfaction of the court,'' ''from the minutes and records of this court and by other proper record evidence made at the time,'' that such orders, decrees, judgments and entries *nunc pro tunc,* should be made, and reciting therein all the facts so made to appear to the court. The two record entries hereinabove mentioned are:

''Wednesday, September 26, 1888. Second day of September Term.

''Firman Desloge, vs. Odil M. Janies et al. Report of Sale.

''Now at this time comes Henry S. Spiva, sheriff of Madison county, Missouri, and files his report of sale of the real estate ordered to be sold and this cause continued for distribution.''

''September 29, 1888; 6th day of —— Term.

''Firman Desloge, vs. Mary A. Gregoire et al. Petition for Partition.

''Now at this day comes Benjamin B. Cahoon and presents his account for services rendered herein for the sum of eighty-five dollars, which was by the court examined and allowed to be taxed as other costs in said suit.''

There was also a record entry showing the appointment of a guardian *ad litem* for the minor defend-

ants of date October 5th, 1887, at September term. The next record entry after the allowance of the attorney's fee, is one showing the filing of the application for the *nunc pro tunc* entries.

It was shown by *parol* that an examination of the records and files shows no entries, records, or files made at the March term, 1888. On this state of the record, the plaintiffs claim: (1), that there was no authority to make the *nunc pro tunc* entries; (2), that there being no order of sale of record, the clerk could not deliver a certified copy of said order to the sheriff as his authority to sell, and therefore his sale was void and his deeds thereunder were void; (3), that there was admittedly no notice of the application for *nunc pro tunc* entries, and therefore such orders were void; (4), that there had been no proper service of process upon plaintiff Collier in Pettis county, as shown by the return of the sheriff.

Of these in their reverse order.

I. By a return of the sheriff of Pettis county, it appears that in the partition suit the defendants, Allison Collier, Frederick Collier, Annie Collier, Dora Collier and George B. Collier, the present plaintiff, were each served with a copy of the summons in said cause on the 25th day of August, 1887. These were all of the defendants served in Pettis county. The return shows service by delivery of a copy of the writ of summons to each, but does not show that a copy of the petition was delivered to Allison Collier or either of the others named. However, the record shows that the first party defendant served in the case was John Hill, who was served in Madison county by the sheriff of said county, on the 18th day of August, 1887, by delivery to him of a copy of the petition and a copy of the writ of summons on said date. On the same date, Virginia Smith was likewise served by said sheriff by delivery of a copy of the writ of summons. This all

occurred seven days prior to the service of defendant Collier. The law then in force was the amendatory Act of 1881. [Laws 1881, p. 174.] This act amended in an immaterial matter section 3489, Revised Statutes 1879. The fifth clause of the amended section reads: "Or, fifth, where there are several defendants, by delivering to the defendant who shall be first summoned a copy of the petition and writ, and to such as shall be subsequently summoned, a copy of the writ, or by leaving such copy at the usual place of abode of the defendant, with some person of his family over the age of fifteen years."

This clause is not the portion amended and it has not been since amended, but is now the fifth clause of section 570, Revised Statutes 1899. The contention of the plaintiff is that a copy of the petition must be delivered to the first defendant served in each county where the defendants are in several counties. The act does not so say. The act says: "By delivering to the defendant who shall be first summoned, a copy of the petition and writ, and to such as shall be subsequently summoned, a copy of the writ." This statute simply says that where there are several defendants, the one first served shall receive copy of the petition and writ, "and to such as shall be subsequently served, a copy of the writ." Plaintiff would have us read into this statute the words, "in each county, where they reside in several counties," so that it would thus read: "By delivering to the defendant who shall be first summoned, in each county, where they reside in several counties, a copy of the petition and writ," etc. We do not feel called upon to so rewrite the statute.

There was another statute in force at the time, i. e., section 3493, Revised Statutes 1879, which may throw some light upon the proper construction of the clause under consideration. This section which is now sec. 574, Revised Statutes 1899, reads: "When there

are several defendants residing in different counties, the plaintiff may, at his option, have a summons directed to 'any sheriff in the State of Missouri,' or have a separate summons directed to the sheriff of any county in which one or more defendants may be found."

By this section, plaintiff had his option to have one summons issued directed to any sheriff in the State of Missouri or to have several writs of summons issued directed to the sheriff of any county wherein defendants resided. Now, suppose the plaintiff in this case had exercised his option and had a summons issued to any sheriff in the State, and armed with this summons he had gone to the sheriff of Madison county and had service made there upon one defendant by delivery of copy of petition and writ, and had return made to that effect, and had then sent the same summons to Pettis county, and there had it served by delivery of copy of the writ to George B. Collier, would there be any question of the service? The writ was directed to any sheriff and could be executed as above indicated, for in that case the statute contemplates but the one writ. But the statute goes further and says that the plaintiff may in the exercise of his judgment have several writs instead of the one, but to our mind it does not change the method of service. The first section mentioned clearly shows that no service of the petition was contemplated as to any other defendant than the one first summoned. So that when we read the act of 1881, with the section above quoted, it is clear that there was proper service on the plaintiff George B. Collier in the partition suit. We fail to find the question discussed in any of our cases, and counsel, although extremely diligent, have failed to find any case wherein the point was raised. We cannot sustain the contention of plaintiff without rewriting the statute, and this we must decline to do.

But is it urged by plaintiffs that the bill of exceptions on file in the case does not show that the summons and return thereon, showing previous service on John Hill, was introduced in evidence, and to this extent they challenge the additional abstract of record filed by defendant. Defendant says that said bill of exceptions shows that all the files in the partition case were offered in evidence and are called for in the bill of exceptions, and file their motion asking that this court order up the transcript to verify this statement. This we have not done for the reason that, even if defendant's contention is wrong, it was the duty of the plaintiffs, if they desired to show that there was no valid service on George B. Collier, in addition to showing, as they did, that he was served with no copy of the petition, to show further that he was the first defendant served. They are the parties attacking the validity of the service, and the whole record shows a number of parties to the suit and only a few brought in by publication. They have failed to show an invalid service until they further showed that the parties served in Pettis county were the first parties served with summons. This they did not undertake to do, but place their reliance in the argument here that the statute means that a copy of the petition must be delivered to the first defendant served in each county. By their course of argument they practically admit that there was a previous service in Madison county.

But the entry in the bill of exceptions as set out in the Additional Abstract of the defendant is in this language: "The defendants offer the original petition in the case of Firmin Desloge vs. Janis and others, and all the files thereto attached, described in the caption as Firmin Desloge vs. Odile M. Janies, Mary A. Gregoire and Charles Gregoire and a number of other defendants, which are in the words and figures following: (Clerk will here copy.)"

It is not specifically denied that this entry is not in the bill of exceptions. If so the call for the clerk to copy is sufficient, so that the summons and return would be as much in the bill of exceptions as if copied therein bodily. These were not only documents called for, but they are documents in the possession of the clerk. [Myers v. Myers, 98 Mo. 262; State ex rel. Harber v. Wear, 101 Mo. 414; Tipton v. Renner, 105 Mo. 1; Laws 1903, p. 105.] However, as stated above, this is really immaterial; for inasmuch as plaintiffs were attacking collaterally a judgment which recited due service upon Collier, the burden was upon them to show an invalid service, and this was not done until they made some proof that the Pettis county parties were the ones which were first served.

II. Was notice of the application for the *nunc pro tunc* entries required? This is the next question for consideration. Having determined that George B. Collier was properly served, the record before us shows proper service in the partition suit upon all parties whose interests are involved in the present action. Now, if these parties were properly before the court in the partition proceeding, was notice to them of the application for *nunc pro tunc* entries required? We think not. We so think for two reasons. First, under the rule in this State these entries, if made after final judgment, must be made from evidence appearing from the records or files in the case, and not from parol evidence. The rule is succinctly stated by BURGESS, J., in Ross v. Railroad, 141 Mo. l. c. 395, thus: "The question of the power and authority of a circuit court to correct its record by *nunc pro tunc* entries has been many times before this court, and the rule announced seems to be that in order to justify it in so doing the record must in some way show, either from the judge's minutes, the clerk's entries, or some paper in the cause, the facts authorizing such entries. No such en-

tries can be made from the memory of the judge, nor on *parol* proof derived from other sources. [State v. Jeffors, 64 Mo. 378; Bank v. Allen, 68 Mo. 476; Belkin v. Rhodes, 76 Mo. 650; Saxton v. Smith, 50 Mo. 490; Fletcher v. Coombs, 58 Mo. 434; Wooldridge v. Quinn, 70 Mo. 370; Blize v. Castlio, 8 Mo. App. 294; Evans v. Fisher, 26 Mo. App. 546.]''

Where the proof is limited, as by the rule in Missouri, then there is no necessity for notice, and none is required. In Black on Judgments, section 134, the rule is stated in the following language: ''In general, we may say, that the necessity of notice of such an application must depend upon the sources which are to furnish the evidence of the judgment to be entered. If the examination is to be confined to the records, the presence of the defendant could not affect the result, nor would he have room to contest it. But if it is to be based upon extraneous proof, it is but just that he should have the opportunity to prepare countervailing testimony.''

And to the same effect is Freeman on Judgments (4 Ed.), vol. 1, section 64, where it is said: ''The proceedings on application to enter judgment *nunc pro tunc* are summary, and not required to be supported by pleadings. The practice in some courts seems to require the moving party to give notice of his motion to his adversary, and certainly this is very proper when the entry is not required to be made as a matter of course, and where the motion is supported by other evidence than the records or *quasi* records of the court. If the moving party wishes to use the entry, when procured, to affect the rights of one not a party to the action, he should be notified of the motion. If he does not appear to have had notice of the rendition of the judgment, nor of the motion to enter it *nunc pro tunc*,

he may sometimes escape the effect of the entry. The more usual practice is to proceed *ex parte* to order entries required to complete the record, especially where the court acts solely upon matters of record.''

The cases cited by the two learned authors are to the effect that wherever the rule prevails, as in this State, that no *nunc pro tunc* entry can be made except from some written memoranda upon the records or files in the case, notice of the application is not required. These remarks are applicable to cases where *nunc pro tunc* entries are made after the term of final judgment.

But, secondly, the record entry at the September term, 1888, of the Madison Circuit Court, shows that the report of sale was filed and the cause continued for distribution. No final judgment had, therefore, been rendered in the case. The case was still pending before the court, and the parties having been theretofore duly summoned and brought into court, are there for all purposes until final judgment. That such an action is still pending and undetermined after a decree of partition and order of sale has been made was conclusively announced by this court through MACFARLANE, J., in the case of Aull v. Day, 133 Mo. l. c. 347, wherein was said: ''That the first judgment in partition proceedings is merely interlocutory has often been declared by this court, and is so well settled that a citation of the cases is deemed unnecessary. But see Murray v. Yates, 73 Mo. 15. That such interlocutory judgments, made in the progress of a cause, are always under the control of the court until a final decision is reached, and may be modified at any time to meet the exigencies that may arise, is equally well settled. [Bobb v. Graham, 89 Mo. 207.] The uniform holding of this court before the statute allowing an appeal, that an appeal, or writ of error, from such interlocutory judgment, would not lie, rests upon the theory

that such judgment continues under the control of the court and is subject to corrections and modifications. The right to correct and modify its own orders 'springs from the court's power to control its own action in pending proceedings, so as to subserve the ends of justice.' [Bryant v. Russell, 127 Mo. 433.] Courts should not leave the matter of controversy 'in such a condition that its final administration may be wholly inconsistent with equity and good conscience.' [Shields v. Barrow, 17 How. (U. S.) 130. See, also, Hiles v. Rule, 121 Mo. 256.] Elliott says: 'Until there is an ultimate judgment the case is not finally disposed of, inasmuch as the trial court may change its rulings, award a *venire de novo*, grant a new trial, or make some such order, notwithstanding the fact that in other rulings it may have clearly manifested a purpose to carry its rulings into the ultimate judgment or decree.' [Elliott, App. Proc., sec. 83.] Black, in his work on Judgments, sec. 308, says: 'An interlocutory judgment or decree, made in the progress of a cause, is always under the control of the court until the final decision of the suit, and it may be modified or rescinded, upon sufficient grounds shown, at any time before final judgment, though it be after the term in which the interlocutory sentence was given.'" [See, also, Clark v. Sires, 193 Mo. l. c. 516.]

With the exception of an allowance of an attorney's fee the last record entry in the partition case, prior to the application for the *nunc pro tunc* entries, was the record entry showing the filing of the report of sale and continuing the cause for distribution. There was no order approving the sale and no final judgment in the case.

Up to a final judgment, parties who have been properly brought before the court must take cognizance of the different steps and proceedings in the

cause. This proposition requires no citation of authority.

III. Nor are we impressed with the suggestion of counsel to the effect that because the order of sale had not been spread of record, there could be no certified copy thereof and hence no authority to sell. The judge of the court might have prepared his decree and order of sale and handed it to the clerk to be spread of record and the clerk might have made a certified copy thereof, which would have been sufficient, even before the clerk had actually spread it of record. Or counsel might have prepared such decree and order and submitted it to the court, and had the court approve the same and directed the clerk to spread it of record, which is usually done, and the clerk having the decree and order thus prepared and on file in the cause might have made a certified copy thereof and given it to the sheriff. Or the clerk himself might have written up the decree and order; and before spreading it upon the record, given a certified copy thereof to the sheriff. In either of these cases, had such order and decree been afterwards spread of record, there would be no question. We do not think this point tenable. But further reasons will follow in the succeeding discussion of other questions.

IV. We reach now the contention of the plaintiff that there was no authority of law under the facts shown in the record before us to authorize the trial court to have made these *nunc pro tunc* entries in 1891. This cause was tried at the September term, 1903, more than twelve years after the hearing upon the application for *nunc pro tunc* entries. Nor is it shown in this record what evidence was before the court at the hearing of said application, but defendants argue that, because the record books, and files, as such files were found twelve years after the hearing, fail to show any entries or papers on file upon which a *nunc*

*pro tunc* order could be based, therefore, there is no foundation in law or fact for such *nunc pro tunc* entries. We cannot sustain plaintiff's contention for several reasons.

This judgment *nunc pro tunc* is being attacked collaterally. The judgment upon its face recites that the *nunc pro tunc* entries were made upon the proof made by plaintiffs, "from the minutes and records of this court and by proper record evidence," and excludes the idea of being made except upon the records, minutes and files in the case. What files in the cause and what minutes in the records the trial judge had before him in 1891 does not appear in the present record. Nor does it appear that the files found in 1903, when this case was tried, were all the files which were in existence in 1891. The judgment recites that the clerk from the records and files made out a certified copy of the order of sale. Can these recitations in the judgment *nunc pro tunc* be attacked in the present collateral proceedings? We think not. The judgment upon its face recites facts sufficient to authorize it.

In McClannahan v. Smith, 76 Mo. l. c. 430, where the exact question was in issue, we said: "The validity of the *nunc pro tunc* judgment cannot be assailed in this proceeding, as it recites on its face facts sufficient to authorize it; but it is well settled that such a judgment cannot be made to operate to the prejudice of the rights of third parties acquired in good faith between the time of the rendition of the original judgment and the entry of the judgment *nunc pro tunc.*" In that case a third party, one not a party to the record, had acquired rights, between the date of the original judgment, and the corrected judgment entered *nunc pro tunc,* and it was properly held that he could not be affected by the subsequent order.

Again, in Harlan v. Moore, 132 Mo. l. c. 491, we said: "But it is insisted that there was no record or

*memoranda* from which the amendments could have been made. A sufficient answer to this contention is that the proceedings under which the amendments were allowed were not preserved, and do not appear from the record. In such case we must presume that the court had before it all evidence necessary to justify the amendment.''

So that we say that if it appears that the court has jurisdiction of the subject-matter and of the parties, as shown in this case, a *nunc pro tunc* judgment cannot be attacked in a collateral proceeding on the ground that there was no evidence to support it. This is the ground of attack here.

V. But beyond what we have said in the preceding paragraph is another question, i. e., that no final judgment had been entered in this partition suit up to the time the application was made for entries *nunc pro tunc*. [Aull v. Day, supra.]

In the Aull case, and by the way a Collier was a party to that record, the judgment of partition and order of sale was entered April 22nd, 1893. The land was sold and report of sale made at the December term, 1893. The report of sale was approved and deeds ordered at said term. Motion was also filed to modify and correct the judgment entered at the previous term on April 22nd; this motion was sustained by the trial court and its action affirmed by this court. In addition to what we have already quoted from the Aull case, we add the following:

''But the complaint of appellants is, not that the amended judgment does not correctly declare the rights of the parties, but that the first judgment is a final and conclusive adjudication of such rights, which the court had no power to change at a subsequent term.

''We do not take that view of a judgment in a partition suit which declares the rights of the parties and

orders partition. Such judgments are interlocutory only, and are under the control of the court so long as the proceeding remains undisposed of: It was said in an early case by Judge Scott: 'In proceedings in partition, both at law and in equity, there are two judgments and decrees; the one interlocutory and the other final.' The latter was held to be the principal judgment, and until it was rendered no partition was made. The former judgment only required the partition to be made. [Gudgell v. Mead, 8 Mo. 54.]

"In another case after an interlocutory judgment for partition and an order of sale had been made, a party was permitted to come in, and file an answer, setting up an interest in the property. [Parkinson v. Caplinger, 65 Mo. 293.] It is true that in that case the application to be made a party was at the same term at which the judgment was rendered, but the court said: 'There is no prescribed stage of the proceeding in which this application is to be made. If presented during the pendency of the litigation, we think it is timely and within the power of the court to pass upon it.' [See, also, Bobb v. Graham, 89 Mo. 207, and cases cited.]

"In a subsequent case it was held that a failure to find the respective interests of the parties by an interlocutory decree, was not fatal to the proceedings where the interests were declared in the final judgment. [Akers v. Hobbs, 105 Mo. 132.] . . . ..

"We are of the opinion that the court had the power to correct its erroneous ruling at any time before the final order of distribution, which in such case is the final judgment. [Hart v. Steedman, 98 Mo. 457; Holloway v. Holloway, 103 Mo. 284.] The judgment is affirmed. All the judges of this division concur."

There is no doctrine better settled than the one last announced by Judge Macfarlane, i. e., that the

judgment of partition and order of sale is but an interlocutory judgment and that the order of distribution is the final judgment. Until the final judgment is entered the case is still pending and both the subject-matter and the parties are before the court. The court has the control of its records and judgments until final judgment is entered, and even then until the close of the term at which final judgment was entered. So that barring all other matters, with this cause yet pending, the trial court had the right within itself and without suggestion of either party to make its record speak the truth. This is one of the inherent rights of a court. Not only is it a right, but a duty, when attention is directed to error either of commission or omission. [Mead v. Brown, 65 Mo. 552; Dawson v. Waldheim, 89 Mo. App. 245; Saxton v. Smith, 50 Mo. l. c. 491; 23 Cyc. 861.]

In the Saxton case, supra, it is said: "During the progress of a cause and before final judgment, or after final judgment during the same term, *nunc pro tunc* entries may be made in furtherance of justice to conform the entries to the truth. But after the end of the term at which a final judgment is rendered no entry can be made altering the form of the judgment unless the facts appear of record, or on the minutes or dockets of the court, or from the papers on file, to authorize such change."

In 23 Cyc. 861, the rule is thus quoted: "After the expiration of the term at which a judgment or decree was rendered, it is out of the power of the court, except as allowed by statutes, to amend or correct it in any matter of substance or in any matter affecting the merits, although mere clerical mistakes may be corrected, especially if apparent on the face of the record. But the rule against amendment after the term does not apply to interlocutory judgments or such as remain *in fieri*, or to an action in that behalf taken

with the consent of the parties concerned or at their request, or where the judgment is carried over the term, by a motion to amend or correct it or a petition for a rehearing.''

So that we say that during the pendency of the suit it was proper for the court to amend its records and judgments to conform to the facts, and when it does so, and no appeal is taken therefrom, such judgment is impregnable in a collateral proceeding.

These conclusions render it unnecessary to go into the questions of adverse possession, estoppel *in pais*, etc. The judgment is right and should be and is affirmed.

All concur.